JABESH P. EDDY, Appellant, *v.* THE COUNTY COMMISSIONERS OF THE COUNTY OF PEORIA, Appellees.

### APPEAL FROM PEORIA.

A person who is elected a justice of the peace for a " precinct," if he is subsequently elected to the same office for a " township," and accepts the latter, it is an implied resignation of the first office, which becomes vacated.

THIS cause was heard before PETERS, Judge, at November term, 1853, of the Peoria Circuit Court.

N. H. PURPLE, for appellant.

MANNING and MERRIMAN, for appellees.

TREAT, C. J. This was an action of debt, brought in the name of " The County Commissioners of the county of Peoria," to the use of Sanger, administrator of Gray, against Lucas, Farmer, and Eddy. Lucas and Eddy only were served with process. The declaration was upon a bond, executed by the defendants to the plaintiffs, on the 15th of November, 1849, in the penalty of $1,000, and conditioned for the faithful performance by Lucas of the duties of justice of the peace for the precinct of Lancaster, in the county of Peoria, to which office he was elected on the 6th of November, 1849; and it assigned as a breach of the condition of the bond, that Lucas, as such justice

of the peace, on the 1st of August, 1851, collected and received from one Strother, $51.25, upon a note given by Strother to Gray, and left by the latter with Lucas for collection, which sum he neglected and refused to pay over on demand. Lucas was defaulted. Eddy filed three pleas. The first was *non est factum.* The second plea alleged in substance, that the people of Peoria county adopted the system of township organization under the provisions of the act of the 12th of February, 1849, and that on the 2d of April, 1850, Lucas was duly elected a justice of the peace for the township of Timber, in the county of Peoria, and gave bond and qualified as such; that since that time he had not acted as justice of the peace, except by virtue of his last election and qualification; that while he was justice of the peace for the precinct of Lancaster, Lucas faithfully performed all his official duties, and that.the breach assigned in the declaration occurred after his election and qualification as justice of the peace for the township of Timber. The third plea alleged in substance, that Lucas was elected a justice of the peace for the township of Timber, as stated in the second plea, and accepted the office, and qualified as such justice, whereby his office of justice of the peace for the precinct of Lancaster was vacated and determined; and that the breach complained of in the declaration occurred subsequent to his election and qualification as justice of the peace for the township of Timber. Issue was joined on the first plea; and the court sustained demurrers to the second and third pleas. The issue of fact was found for the plaintiffs, and the damages were assessed at $55; and judgment was thereupon entered against Lucas and Eddy.

The constitution provides that justices of the peace shall be elected for four years. The legislature may determine the number of justices of the peace, but it has no power to abridge the terms of service of those in office. Lucas continued to be a justice of the peace under his first election, until November, 1853, unless he vacated the office by accepting the one to which he was elected in 1850. And unless his second election was absolutely void, the acceptance was an implied resignation of the first office. It is clear that he could not, at the same time, be a justice of the peace for the precinct of Lancaster and for the township of Timber. The two offices were incompatible, and could not be united in the same person. It might as well be insisted, that one person could, at the same time, be judge of two circuits, or sheriff of two counties. There is no pretence for saying, that Lucas was ineligible to the office of justice of the peace under the township law. The election was valid in

itself, and it became effectual on his acceptance of the office. He was disqualified from holding both offices, but it was competent for him to elect which he would hold. He could not retain the first, after assuming the duties of the last. The acceptance of the latter was an abandonment of the former. From the necessity of the case, he ceased to be a justice of the peace for Lancaster precinct, the moment he qualified and entered on the duties of justice of the peace of the township of Timber. The case of The People *v.* Carrique, 2 Hill, 93, is an authority exactly in point. A law of 1822 provided for the appointment of three justices of the peace of the city of Hudson ; and in April, 1836, Carrique was appointed one of these justices, and entered upon the duties of the office, which he continued to exercise till in March, 1840. A law of 1830 provided for the appointment of two additional justices of the peace of the city of Hudson ; and in January, 1838, Carrique was appointed a justice under this law, and qualified and acted under ·the appointment. In March, 1840, Whiting was appointed a justice of the peace in the place of Carrique, and qualified as such. The tenure of the office under both laws was four years. An information in the nature of a *quo warranto* was then filed at the instance of Whiting against Carrique ; and the court decided that Carrique was properly in office under the last appointment ; that the first office was *ipso facto* vacated, by his acceptance of the new appointment. See also Angell & Ames on Corporations, §§ 433, 434, and notes. The second and third pleas presented a good defence to the action, and the court erred in sustaining the demurrers thereto.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*